**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Hunter G Benharris
14 Penn Plaza, 22nd Floor
New York, New York 10122
Telephone: (212) 300-0375

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SIMONE WISDOM, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br>**-against-**<br><br>**CAPSULE CORPORATION,**<br><br>**Defendant.** | **No.**<br><br>**CLASS ACTION COMPLAINT** |

Simone Wisdom ("Plaintiff"), individually and on behalf of all others similarly situated, as class representative, alleges as follows:

**NATURE OF THE ACTION**

1. This lawsuit seeks to recover damages for Plaintiff and similarly situated current and former employees and applicants whose criminal background reports were used by Capsule Corporation ("Capsule" or "Defendant") to deny them employment or terminate their employment without first providing the reports and the protections required by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq.

2. This lawsuit also seeks to recover damages for Plaintiff and similarly situated employees and applicants in New York City who were subjected to Defendant's unlawful criminal background policies in violation of the New York City Human Rights Law ("NYCHRL"), including the New York City Fair Chance Act ("FCA").

3. This lawsuit further seeks to recover unpaid uniform maintenance compensation and

other damages for Plaintiff and similarly situated Hourly Workers ("Hourly Workers") who work or have worked for Defendant in New York and were required to wear Capsule uniforms.

4. Plaintiff also seeks to recover damages for herself and similar employees who work or have worked for Defendant in New York and were subjected to an unlawful absence control policy, which subjected employees to attendance points, discipline, and threats of termination due to legally protected absences.

5. Plaintiff seeks to protect these employees and applicants from the various unlawful employment and wage and hour policies that Defendant imposes upon them in violation of the FCRA, the FCA, the NYCHRL, and the New York Labor Law ("NYLL").

6. Defendant operates a pharmacy and delivery business through which customers obtain prescriptions delivered directly to them by Defendant's Hourly Workers.

7. Defendant employs Plaintiff and similarly situated Hourly Workers to transport prescriptions from its pharmacy to its customers. Their delivery work is integral to Defendant's business.

8. Defendant determines which applicants it will hire, obtains criminal background information concerning applicants and employees, and determines whether that information will be used to deny or terminate employment.

9. Defendant also controls its employees' attendance records, disciplinary points, uniform requirements, payroll, and wage documentation. The policies challenged in this action were imposed by Defendant as conditions of employment.

10. Defendant employed Plaintiff as an Hourly Worker biker from approximately July 2025 until August 8, 2025, and paid her the applicable minimum wage.

11. As part of Plaintiff's application for employment, Defendant performed a criminal

background check which revealed Plaintiff's arrest history.

12. Defendant's background screening policies require employees and applicants to submit to criminal history inquiries as part of the employment process.

13. Defendant publicly represents that all of its couriers undergo background checks. Defendant obtains and evaluates those checks through common screening procedures. *See* **Exhibit A**, Capsule FAQs.

14. Despite obtaining personal information for employment decisions, Defendant failed to provide Plaintiff and similarly situated persons with their consumer reports before communicating final adverse employment decisions based upon those reports.

15. Defendant thereby deprived Plaintiff and similarly situated persons of the opportunity to review the information being used against them and explain why it did not justify the loss of employment before the decision was made.

16. After Plaintiff began working, she was injured in a bicycle crash while performing her duties for Defendant. Defendant assessed attendance points against Plaintiff for calling out of work because of her injuries.

17. On August 5, 2025, Defendant sent Plaintiff an attendance warning stating that she had accumulated four points and that employees who accumulated twelve points would be subject to termination. *See* **Exhibit B**, Attendance Email.

18. Three days later, on August 8, 2025, Defendant notified Plaintiff that it had evaluated her background and had determined that she could not continue her employment. Defendant made her termination effective that same day. *See* **Exhibit C**, Termination Email.

19. Defendant did not provide Plaintiff with an FCA notice or a written analysis explaining the relationship between her criminal history and her ability to perform the duties of a

delivery biker before terminating her employment.

20. Defendant did not identify the criminal history on which it relied, explain its relationship to Plaintiff's job duties, or provide the written fair chance analysis required before terminating her employment.

21. Defendant announced that Plaintiff's termination was effective immediately. It did not provide Plaintiff a reasonable opportunity to respond to its criminal history inquiry and analysis before ending her employment.

22. Defendant's practice of obtaining criminal history before a conditional offer of employment, and its separate practice of terminating employees without the required fair chance process, deprived Plaintiff and similarly situated employees and applicants of the protections afforded by the FCA.

23. Defendant further maintains a draconian absence control system that punishes employees for unscheduled absences, including absences taken because of illness, injury, and disability.

24. Under this system, Defendant assesses attendance points that accumulate toward disciplinary notices and termination. Defendant's August 5, 2025 email advised Plaintiff that she had four points, that formal notices would issue at six or nine points, and that twelve points would subject her to termination. *See* **Exhibit B**.

25. Defendant applied that policy to Plaintiff's absences following a bicycle crash sustained while performing Defendant's work. Rather than accommodate her need to recover, Defendant assessed disciplinary points and threatened her with escalating discipline.

26. Defendant's policy forces employees to choose between taking needed recovery leave and accumulating points that threaten their continued employment.

27. NYLL § 215 expressly prohibits penalizing employees for legally protected absences, including by assessing attendance points that subject or could subject an employee to discipline. Defendant's policy does precisely what that law prohibits.

28. Defendant's August 8, 2025 termination followed its attendance warning by only three days. Defendant had obtained Plaintiff's criminal history in connection with her application, but invoked that history to end her employment after her injury and injury-related absences.

29. Defendant used Plaintiff's criminal history as a pretext to terminate her because of her actual or perceived disability and her need for recovery leave.

30. On average, Wisdom worked five days per week for Defendant.

31. Defendant required Plaintiff and similarly situated Hourly Workers to wear a vest identifying them as Capsule employees.

32. Despite working five days per week, defendant provided Plaintiff with two vests and did not pay her uniform maintenance compensation.

33. Defendant required Hourly Workers to wear clothing identifying them as Capsule employees while performing their duties, but shifted the responsibility for maintaining that clothing to the employees.

34. Plaintiff and similarly situated Hourly Workers were paid the applicable minimum wage. Defendant did not pay the additional uniform maintenance compensation required by the NYLL and the Miscellaneous Industries and Occupations Wage Order.

35. Defendant's failure to pay uniform maintenance compensation was a common payroll practice affecting employees subject to its uniform requirement.

36. Defendant also failed to provide Plaintiff and similarly situated Hourly Workers with accurate wage statements pursuant to NYLL § 195(3).

37. The wage statements failed to accurately disclose the compensation owed for work performed in Defendant's required uniforms. Plaintiff and similarly situated Hourly Workers were consequently misinformed about the wages to which they were entitled.

38. Plaintiff relied on Defendant's wage statements to determine whether Defendant paid her correctly. The statements concealed the unpaid uniform maintenance compensation, allowing Defendant to continue its unlawful pay practice without Plaintiff's awareness that she was being underpaid.

39. The goods transported by Hourly Workers are manufactured outside New York and move through manufacturers and distributors into New York for delivery to Defendant's customers.

40. Defendant receives goods as part of a distribution process intended to end with delivery to its customers. Defendant's receipt and preparation of medications and other pharmaceutical goods are intermediate steps before Hourly Workers transport the medications to those customers.

41. Hourly Workers carry the medications from Defendant's pharmacy to the customers who receive them. Delivery is the work Defendant hires them to perform, rather than an incidental task unrelated to their occupation.

42. The delivery of these medications forms the last leg of a chain of interstate commerce. The medications do not "come to rest" before Hourly Workers complete their delivery to Defendant's customers.

43. Plaintiff and similarly situated Hourly Workers play a direct and necessary role in completing that movement of goods. The fact that their individual delivery routes are within New York does not change the interstate character of the continuous distribution process in which they

participate.

44. Accordingly, Plaintiff and similarly situated Hourly Workers belong to a class of transportation workers engaged in interstate commerce whose contracts of employment are exempt from the Federal Arbitration Act pursuant to 9 U.S.C. § 1.

45. Plaintiff brings this action on behalf of herself and similarly situated persons pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") to remedy Defendant's common background screening, attendance, and wage policies. Plaintiff also brings individual claims arising from Defendant's discrimination against her because of her actual or perceived disability and failure to accommodate her injuries.

## THE PARTIES

### Plaintiff

**Simone Wisdom**

46. Simone Wisdom ("Wisdom") is an adult individual who is a resident of New York.

47. Wisdom was employed by Defendant as a delivery biker from approximately July 2025 until August 8, 2025, primarily making deliveries in New York, New York.

48. Wisdom is a covered employee within the meaning of the NYLL and the NYCHRL, and a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

### Defendant

**Capsule Corporation**

49. Capsule Corporation is a corporation organized and existing under the laws of Delaware, with its principal executive office located at 122 W 146th Street, New York, New York, 10039.

50. Defendant operates a mobile pharmacy and delivery business in New York City and

employs delivery bikers to carry out its business.

51. Defendant was and is a covered employer within the meaning of the NYLL and the NYCHRL and, at all times relevant, employed Plaintiff and similarly situated employees.

52. Defendant maintained control, oversight, and direction over Plaintiff and similar employees, including hiring, termination, timekeeping, payroll, uniforms, criminal background screening, and attendance practices.

53. Defendant's delivery operations depend on employees such as Wisdom who physically transport prescriptions to customers. Defendant assigns the delivery work and supplies the prescriptions to be transported.

54. Defendant's payroll and attendance systems maintain the information needed to identify employees subject to its uniform and attendance policies. Defendant directed Wisdom to its Paycom system for attendance points, pay stubs, and tax forms. *See* **Exhibits B**, **Exhibit C**.

55. Defendant applies common employment policies, practices, and procedures to employees in its operations, including policies governing criminal background screening, attendance points, and payment of wages.

56. Defendant is a person within the meaning of the FCRA, 15 U.S.C. § 1681a(b), and procured and used background reports for employment purposes.

## JURISDICTION AND VENUE

57. This Court has subject matter jurisdiction over Plaintiff's FCRA claim pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

58. This Court has supplemental jurisdiction over Plaintiff's state and city law claims pursuant to 28 U.S.C. § 1367.

59. Defendant is subject to personal jurisdiction in New York because it conducts

business and employed Plaintiff in New York, and Plaintiff's claims arise from that conduct.

60. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FCRA CLASS ACTION ALLEGATIONS

61. Plaintiff brings the First Cause of Action, an FCRA claim, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and a class of persons consisting of:

> All current and former Hourly Workers and applicants for employment with Defendant in the United States between November 5, 2024 and the date of final judgment in this matter, as to whom Defendant communicated or implemented a denial of employment, termination, or other adverse employment decision based in whole or in part on a consumer report before providing that person a copy of the report (the "FCRA Class").

62. The members of the FCRA Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

63. The exact number and identities of the members of the FCRA Class can be determined from Defendant's background screening, disclosure, and employment records.

64. Plaintiff's claims are typical of those claims that could be alleged by any member of the FCRA Class, and the relief sought is typical of the relief which would be sought by each member of the FCRA Class in separate actions.

65. Plaintiff and the FCRA Class have all been injured in that they were deprived of the opportunity to review and address their consumer reports before Defendant used those reports to communicate or implement final adverse employment decisions, due to Defendant's common policies, practices, and patterns of conduct. Defendant's corporate-wide policies and practices affected everyone in the FCRA Class similarly, and Defendant benefited from the same type of

unfair and/or wrongful acts as to each member of the FCRA Class.

66. Plaintiff is able to fairly and adequately protect the interests of the FCRA Class and has no interests antagonistic to the FCRA Class.

67. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in employment cases.

68. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of employment litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate Defendant. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

69. Common questions of law and fact exist as to the FCRA Class that predominate over any questions only affecting Plaintiff and/or each member of the FCRA Class individually and include, but are not limited to, the following:

(a) Whether Defendant communicated or implemented final adverse employment decisions concerning Plaintiff and the FCRA Class before providing them with copies of the consumer reports on which those decisions were based;

(b) whether Defendant's common screening procedures deprived Plaintiff and the FCRA Class of a meaningful opportunity to review and address their consumer reports before those decisions;

(c) whether Defendant knew or recklessly disregarded the FCRA's pre-adverse-action disclosure requirements; and

(d) whether Plaintiff and the FCRA Class are entitled to damages and other relief for Defendant's violations of the FCRA.

## NEW YORK CLASS ACTION ALLEGATIONS

70. Plaintiff brings the Second Cause of Action, an FCA claim, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and a class of persons consisting of:

> All current and former Hourly Workers of Defendant in New York City between November 5, 2023 and the date of final judgment in this matter whose employment Defendant terminated based in whole or in part on criminal history before providing a written fair chance analysis and an opportunity to respond (the "FCA Class").

71. The members of the FCA Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

72. The exact number and identities of the members of the FCA Class can be determined from Defendant's personnel, background screening, and employment records.

73. Plaintiff's claims are typical of those claims that could be alleged by any member of the FCA Class, and the relief sought is typical of the relief which would be sought by each member of the FCA Class in separate actions.

74. Plaintiff and the FCA Class have all been injured in that Defendant terminated their employment based on criminal history without providing the required written fair chance analysis and opportunity to respond, due to Defendant's common policies, practices, and patterns of conduct. Defendant's corporate-wide policies and practices affected everyone in the FCA Class similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each member of the FCA Class.

75. Plaintiff is able to fairly and adequately protect the interests of the FCA Class and has no interests antagonistic to the FCA Class.

76. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs

and classes in employment cases.

77. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of employment litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate Defendant. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

78. Common questions of law and fact exist as to the FCA Class that predominate over any questions only affecting Plaintiff and/or each member of the FCA Class individually and include, but are not limited to, the following:

(a) Whether Defendant terminated Plaintiff and the FCA Class based on criminal history without providing the required written fair chance analysis and supporting documents;

(b) whether Defendant afforded Plaintiff and the FCA Class the response period required by the fair chance process before terminating their employment; and

(c) whether Defendant's common background screening and termination policies violated the FCA.

79. Plaintiff brings the Third and Fourth Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and a class of persons consisting of:

> All current and former Hourly Workers of Defendant in New York between November 5, 2020 and the date of final judgment in this matter (the "NYLL Class").

80. The members of the NYLL Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

81. The exact number and identities of the members of the NYLL Class can be

determined from Defendant's personnel, timekeeping, and payroll records.

82. Plaintiff's claims are typical of those claims that could be alleged by any member of the NYLL Class, and the relief sought is typical of the relief which would be sought by each member of the NYLL Class in separate actions.

83. Plaintiff and the NYLL Class have all been injured in that they have been under-compensated due to Defendant's common policies, practices, and patterns of conduct. Defendant's corporate-wide policies and practices affected everyone in the NYLL Class similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each member of the NYLL Class.

84. Plaintiff is able to fairly and adequately protect the interests of the NYLL Class and has no interests antagonistic to the NYLL Class.

85. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

86. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate Defendant. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

87. Common questions of law and fact exist as to the NYLL Class that predominate over any questions only affecting Plaintiff and/or each member of the NYLL Class individually and include, but are not limited to, the following:

(a) Whether Defendant required Plaintiff and the NYLL Class to wear uniforms and failed to launder or maintain those uniforms;

(b) whether Defendant failed to pay Plaintiff and the NYLL Class the uniform maintenance compensation required by the NYLL; and

(c) whether Defendant failed to furnish Plaintiff and the NYLL Class with accurate statements with every payment of wages, as required by the NYLL.

88. Plaintiff brings the Fifth Cause of Action, an NYLL claim, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of herself and a class of persons consisting of:

> All current and former Hourly Workers of Defendant in New York between November 5, 2024 and the date of final judgment in this matter who were subject to Defendant's Absence Policy (the "NYLL § 215 Class").

89. The members of the NYLL § 215 Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

90. The exact number and identities of the members of the NYLL § 215 Class can be determined from Defendant's personnel, attendance, and timekeeping records.

91. Plaintiff's claims are typical of those claims that could be alleged by any member of the NYLL § 215 Class, and the relief sought is typical of the relief which would be sought by each member of the NYLL § 215 Class in separate actions.

92. Plaintiff and the NYLL § 215 Class have all been assessed attendance points, disciplined, or threatened with discipline or termination, due to Defendant's unlawful attendance policy. Defendant's corporate-wide policies and practices affected everyone in the NYLL § 215 Class similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each member of the NYLL § 215 Class.

93. Plaintiff is able to fairly and adequately protect the interests of the NYLL § 215

Class and has no interests antagonistic to the NYLL § 215 Class.

94. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in employment cases.

95. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of employment litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate Defendant. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

96. Common questions of law and fact exist as to the NYLL § 215 Class that predominate over any questions only affecting Plaintiff and/or each member of the NYLL § 215 Class individually and include, but are not limited to, the following:

(a) whether Defendant applied an unlawful attendance policy to assess attendance points against, terminate, or otherwise discipline Plaintiff and the NYLL § 215 Class, or threatened to terminate or otherwise discipline Plaintiff and the NYLL § 215 Class for legally protected absences.

## FACTUAL ALLEGATIONS

### Simone Wisdom

97. From approximately July 2025 until August 8, 2025, Wisdom was employed by Defendant as a delivery biker in New York City.

98. Defendant paid Wisdom the applicable minimum wage for her delivery work and required her to follow Defendant's employment policies.

99. Wisdom's regular duties included picking up prescriptions from Defendant and

transporting them by bicycle to Defendant's customers in New York City. Defendant employed her to perform the delivery portion of its pharmacy business.

100. Wisdom physically transported the prescriptions to the customers for whom Defendant had filled them. Her delivery work completed Defendant's movement of those medications to their intended recipients.

101. The medications Wisdom delivered included products manufactured outside New York and shipped into New York for distribution to Defendant's customers. Her work completed the last portion of those deliveries.

102. As part of its application process, Defendant inquired into Wisdom's criminal history and performed a criminal background check before extending a conditional offer of employment.

103. Defendant procured a criminal background report concerning Wisdom from a third-party consumer reporting agency for use in deciding whether to hire or retain her (the "Consumer Report").

104. The agency that furnished the Consumer Report regularly assembles or evaluates consumer information for fees for the purpose of furnishing reports to third parties and uses facilities of interstate commerce in preparing or furnishing those reports, and is a consumer reporting agency within the meaning of 15 U.S.C. § 1681a(f).

105. The Consumer Report contained criminal history information bearing on Wisdom's character, general reputation, or personal characteristics and was used by Defendant as a factor in determining her eligibility for continued employment. It was a consumer report within the meaning of 15 U.S.C. § 1681a(d)(1), obtained for employment purposes within the meaning of 15 U.S.C. § 1681a(h).

106. The Consumer Report contained information concerning Wisdom's previous

criminal history, which Defendant relied upon in deciding to terminate her employment.

107. Defendant performed the criminal background check as part of Wisdom's application, permitted her to begin working, and continued employing her until after her workplace injury and injury-related absences.

108. On or about July 31, 2025, Wisdom was injured in a bicycle crash while performing deliveries for Defendant. Her physical injuries interfered with her ability to perform bicycle deliveries while she recovered.

109. Wisdom notified Defendant that she was injured and needed to be absent from work because of those injuries.

110. A manager employed by Defendant emailed Wisdom on August 5, 2025 that Defendant was aware of her injuries, and noted that she provided a required doctor's note. *See* **Exhibit D**.

111. On August 5, 2025, Wisdom received an email stating that she had accumulated "3+ attendance points" in the past ninety days. The email identified her total as four points. *See* **Exhibit B**.

112. The email stated that employees would receive formal notices at six or nine points and would be subject to termination if they accumulated twelve points. It directed employees to the Paycom system to review their points. *See* **Exhibit B**.

113. The warning subjected Wisdom to the threat of escalating discipline and termination because of her injury-related absences.

114. The points were an immediate penalty: they moved Wisdom closer to the thresholds for formal discipline and termination while warning her that additional absences could cost her job.

115. Defendant treated Wisdom's injury-related callouts as attendance violations, assessed points against her, and warned her that the accumulation of points would result in additional discipline and termination.

116. Defendant did not engage in a good faith cooperative dialogue with Wisdom concerning her need for recovery leave, the duration of that leave, or an accommodation that would permit her to resume her duties. Defendant did not provide her with a written final determination identifying an accommodation granted or denied.

117. While Defendant later stated that it would remove these points, it made that statement only after requiring Wisdom to submit a doctor's note. *See* **Exhibit D**.

118. Moreover, Defendant did not remove these points, but instead, on August 8, 2025, at 10:12 a.m. EDT, Meagan Holman of Capsule Support emailed Wisdom concerning the continuation of her employment. *See* **Exhibit C**.

119. The email stated: "We have evaluated the details surrounding your background and have determined that it is not sufficient for you to continue your employment with Capsule; therefore, your termination is effective 08/08/2025." *See* **Exhibit C**.

120. The email further stated that Wisdom would receive her final paycheck on August 15, 2025 and would retain access to her Paycom profile for pay stubs and tax forms. *See* **Exhibit C**.

121. Defendant's communication announced an immediate termination. It did not state that Defendant was considering a proposed termination or that the decision remained open pending Wisdom's response.

122. The statement that Wisdom's termination was effective August 8, 2025, together with instructions concerning her final paycheck, communicated that Defendant had already decided to end her employment. *See* **Exhibit C**.

123. The email did not identify a period for Wisdom to submit an explanation before Defendant would decide whether to retain her. It communicated an accomplished employment decision.

124. Defendant based its termination decision, at least in part, on the criminal background information it had obtained concerning Wisdom.

125. Before Defendant communicated and implemented Wisdom's termination, neither Defendant nor anyone acting on its behalf had provided Wisdom with a copy of the Consumer Report or a written summary of her rights under the FCRA.

126. Defendant gave Wisdom no interval before its final decision in which she could review the Consumer Report and respond to the information Defendant was using to end her employment.

127. Wisdom understood Defendant's August 8, 2025 email to communicate a final termination. Defendant stated that her termination was effective that day and gave her no opportunity to review the Consumer Report and address its contents before that decision.

128. Had Defendant provided Wisdom with the Consumer Report before deciding to terminate her, she would have reviewed the specific criminal history being used against her and addressed that history with Defendant before it made its decision.

129. Wisdom could not explain why her arrest history did not establish that she was unable to perform the delivery work Defendant had already hired her to perform, point to her performance of that work before her injury, and request that Defendant assess her fitness for continued employment on that basis.

130. Defendant's failure to provide the Consumer Report before taking final action deprived Wisdom of the opportunity to see the information being used against her, explain its

significance, and seek an individualized decision while her employment was still under consideration.

131. Defendant thereby interfered with Wisdom's ability to respond to the use of her personal information in the decision to terminate her employment. This injury occurred when Defendant used that information to make its final decision without first allowing her to review and address it.

132. The injury was the loss of Wisdom's opportunity to control how her personal information was presented and understood in an employment decision directly affecting her. Defendant used that information against her without first allowing her to see or respond to it.

133. Wisdom's opportunity to address the report included explaining the significance of the reported history to her actual duties and asking Defendant to evaluate her continued employment in light of the work she had already performed.

134. That opportunity existed before Defendant made its final decision. Providing information after announcing an immediate termination would not restore the opportunity Defendant had already denied.

135. Defendant's conduct deprived Wisdom of that opportunity at the time it mattered: before her employment ended. Defendant used her personal information to bring about an immediate termination, and Wisdom lost her employment and the compensation she otherwise would have continued earning.

136. Defendant also failed to provide Wisdom with a written fair chance analysis explaining why her criminal history had a direct relationship to her delivery position or created an unreasonable risk to property or the safety or welfare of others.

137. Defendant's statement that Wisdom's background was not sufficient for continued

employment did not identify the criminal information relied upon, the relevant job duties, the applicable fair chance factors, or its reasons for rejecting continued employment under those factors.

138. Defendant did not provide Wisdom with the required FCA disclosures or an opportunity to respond to a written fair chance analysis before terminating her employment.

139. Defendant did not give Wisdom a reasonable period of at least five business days to respond after receiving the criminal history inquiry and fair chance analysis. It provided neither the analysis nor a response period before making her termination effective.

140. Defendant did not provide the information necessary for Wisdom to determine what criminal history it was evaluating or why it believed that history justified ending her delivery work.

141. Defendant did not request from Wisdom the information needed to assess the relevant fair chance factors or invite her to provide information supporting her continued employment before terminating her.

142. Defendant did not identify any connection between Wisdom's arrest history and her actual delivery duties. Instead, it relied on the conclusory statement that her background was not sufficient for her to continue working, without the individualized assessment and opportunity to respond required by the FCA.

143. Defendant's failure to provide the required pretermination disclosures and review process reflected its common screening practices, rather than an individualized agreement with Wisdom.

144. Defendant obtained consumer reports through a commercial screening arrangement requiring it to certify compliance with the FCRA's employment-report requirements, including the pre-adverse-action requirements. Despite those obligations, Defendant communicated an immediate termination based on Wisdom's background without completing the required process.

145. Defendant knew or recklessly disregarded the requirement to provide the report and rights summary before taking adverse employment action. The immediate termination language, absence of the required prior disclosures, and use of an established background screening process support that inference.

146. Defendant maintains a screening process that it uses to evaluate its couriers. Defendant received notice of its FCRA obligations through its screening arrangement and the certifications required to obtain consumer reports.

147. Defendant's termination email demonstrates that it evaluated Wisdom's background and deliberately made an employment decision based on that evaluation. It nevertheless communicated an immediate termination without first supplying the report and rights summary.

148. Defendant's use of that sequence reflected its established employment screening practices. Defendant knowingly or recklessly disregarded the protections required before using consumer reports to take adverse employment action.

149. Defendant's background explanation followed closely after Wisdom's workplace injury, injury-related absences, and attendance warning.

150. Wisdom's actual or perceived disability and need for injury-related leave were motivating factors in Defendant's assessment of attendance points and decision to terminate her employment. Defendant used the criminal background explanation, at least in part, as a pretext for disability discrimination.

151. Defendant's reliance on Wisdom's criminal background and its discrimination because of her injuries and need for leave were overlapping reasons for its actions. Defendant's use of criminal history did not excuse its discrimination or its failure to provide the separate protections

required by the FCRA and FCA.

152. Wisdom could perform the essential requisites of her delivery position with a reasonable period of recovery leave. Defendant terminated her rather than provide that accommodation or engage in a dialogue to determine the leave needed for her return.

153. During her employment, Defendant required Wisdom to wear a vest identifying her as a Capsule delivery biker while performing her duties.

154. The required Capsule-identifying vest was a uniform required by Defendant as a condition of employment and was not merely ordinary basic street clothing selected by Wisdom.

155. Defendant supplied Wisdom with only two vests and did not pay her any uniform maintenance compensation.

156. Wisdom received two required vests and washed them herself. Defendant did not launder or maintain the vests she used for work.

157. Throughout her employment, Defendant provided Wisdom with wage statements that omitted the uniform maintenance compensation owed to her and presented her hourly wages as the full compensation for the work covered by those statements.

158. Wisdom relied on her wage statements to determine whether Defendant had paid her correctly. The statements misinformed her about the compensation she was entitled to receive because they did not reflect the additional uniform maintenance pay required for the vest Defendant required her to wear.

159. Defendant's inaccurate wage statements caused Wisdom to believe she had received the compensation owed for the work reflected on those statements. As a result, she did not identify or demand the unpaid uniform maintenance compensation while Defendant continued its unlawful pay practice. Accurate wage statements would have enabled Wisdom to recognize the underpayment

and seek those wages earlier.

160. Defendant's failure to provide accurate wage statements allowed Defendant to continue withholding uniform maintenance compensation without Wisdom's awareness that she was being underpaid, delaying her recovery of those wages and depriving her of their use.

**FIRST CAUSE OF ACTION**
**Fair Credit Reporting Act – Failure to Provide Pre-Adverse-Action Disclosures**
**(Brought on behalf of Plaintiff and the FCRA Class)**

161. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

162. The provisions of 15 U.S.C. § 1681b(b)(3)(A) apply to Defendant and protect Plaintiff and the FCRA Class.

163. Defendant procured and used consumer reports for employment purposes concerning Plaintiff and the FCRA Class and took adverse employment action based in whole or in part on those reports.

164. Before taking such adverse action, Defendant was required to provide the affected consumer a copy of the report and the written description of consumer rights prescribed under 15 U.S.C. § 1681g(c)(3).

165. Defendant violated 15 U.S.C. § 1681b(b)(3)(A) by communicating and implementing final adverse employment decisions before providing Plaintiff and the FCRA Class copies of their consumer reports. Defendant also failed to provide Plaintiff the required rights summary before her termination.

166. Defendant's conduct deprived Plaintiff and the FCRA Class of a meaningful opportunity to review the information used against them and explain, contest, or otherwise address that information with Defendant before the final decisions.

167. Defendant used Plaintiff's personal information to terminate her employment without allowing her to see and respond to the information before the decision. Plaintiff thereby suffered an invasion of her protected privacy interests and lost a meaningful opportunity to advocate for continued employment.

168. Defendant acted willfully, knowingly, or in reckless disregard of its obligations under the FCRA.

169. Defendant's willfulness is demonstrated by its procurement of reports through an established screening process, its certifications concerning compliance with the FCRA, and its decision to announce immediate terminations without first providing the reports and required rights summaries.

170. As a result of Defendant's willful noncompliance, Plaintiff and the FCRA Class are entitled to actual damages or statutory damages of not less than $100 and not more than $1,000, punitive damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

171. Moreover, Plaintiff and members of the FCRA Class are entitled to actual damages and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681o.

## SECOND CAUSE OF ACTION
**New York City Human Rights Law – Fair Chance Act**
**(Brought on behalf of Plaintiff and the FCA Class)**

172. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

173. The provisions of the FCA, including N.Y.C. Administrative Code §§ 8-107(10), (11), and (11-a), apply to Defendant and protect Plaintiff and the applicable class members.

174. Defendant violated N.Y.C. Administrative Code § 8-107(11-a)(a)(3) by inquiring into Plaintiff's pending arrest, criminal accusation, or criminal conviction records before extending

conditional offers of employment.

175. Defendant violated N.Y.C. Administrative Code § 8-107(11-a)(c) by terminating Plaintiff and the FCA Class based on criminal history without requesting the information needed for the relevant fair chance analysis, providing the required written analysis and supporting documents, and affording a reasonable opportunity to respond before final action.

176. Defendant's August 8, 2025 email made Plaintiff's termination effective immediately, without disclosing its inquiry and analysis or allowing the response period required by the fair chance process.

177. Defendant further discriminated against Plaintiff by using her criminal history to terminate her employment without an individualized determination under the relevant fair chance factors that her history bore a direct relationship to her delivery duties or that her continued employment posed an unreasonable risk. Defendant's conclusory termination email did not supply that determination.

178. Defendant's conduct deprived Plaintiff and the respective class members of the employment protections afforded by the FCA and caused loss of employment opportunities, compensation, and other damages.

179. Defendant is responsible for its own policies and for the conduct of its employees and agents under N.Y.C. Administrative Code § 8-107(13).

180. Defendant's immediate termination of Plaintiff without the required process, and its implementation of the common policies alleged above, reflected a willful or wanton disregard of protected rights or recklessness toward those rights.

181. Due to Defendant's violations, Plaintiff and the applicable class members are entitled to compensatory damages, including lost compensation, punitive damages, and reasonable attorneys'

fees and costs pursuant to N.Y.C. Administrative Code § 8-502.

**THIRD CAUSE OF ACTION**
**New York Labor Law – Uniform Maintenance Pay**
**(Brought on behalf of Plaintiff and the NYLL Class)**

182. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

183. The provisions of Article 19 of the NYLL and the Miscellaneous Industries and Occupations Wage Order, including 12 N.Y.C.R.R. § 142-2.5(c), apply to Defendant and protect Plaintiff and the NYLL Class.

184. Defendant required Plaintiff and the NYLL Class to wear uniforms as a condition of employment and failed to launder or maintain those uniforms.

185. Defendant paid Plaintiff and the NYLL Class at the applicable minimum wage and failed to pay the additional weekly uniform maintenance compensation required by the wage order at the rates applicable to their hours and locations of work.

186. Defendant's failure to pay the required uniform maintenance compensation violated the NYLL and its supporting regulations.

187. Due to Defendant's violations of the NYLL, Plaintiff and the NYLL Class are entitled to recover their unpaid uniform maintenance compensation, an additional equal amount as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest pursuant to NYLL §§ 198 and 663.

**FOURTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiff and the NYLL Class)**

188. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

189. Defendant failed to supply Plaintiff and the NYLL Class with accurate statements of wages with every payment of wages as required by NYLL § 195(3). Defendant's statements omitted the uniform maintenance compensation owed and misrepresented the compensation for the work reflected on the statements.

190. Plaintiff and the NYLL Class relied upon Defendant's wage statements to determine whether they were paid correctly. The inaccurate statements misinformed them about their compensation and allowed Defendant to continue its unlawful pay practice without their awareness that they were being underpaid, delaying their recovery of the withheld wages.

191. Due to Defendant's violations of NYLL § 195(3), Plaintiff and the NYLL Class are entitled to statutory damages of two hundred fifty dollars for each workday that the violations occurred or continued, up to a total of five thousand dollars each, and reasonable attorneys' fees and costs pursuant to NYLL § 198(1-d).

## FIFTH CAUSE OF ACTION
**New York Labor Law – Unlawful Retaliation**
**(Brought on behalf of Plaintiff and the NYLL § 215 Class)**

192. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

193. The provisions of NYLL § 215 and its supporting regulations apply to Defendant and protect Plaintiff and the NYLL § 215 Class.

194. NYLL § 215 prohibits an employer from discharging, threatening, penalizing, or otherwise discriminating or retaliating against an employee because the employee used a legally protected absence. Prohibited conduct includes assessing attendance points that subject or could subject an employee to disciplinary action.

195. Wisdom's absences were taken because she required a reasonable period to recover

from her physical injuries and resume her duties. Such recovery leave was protected under the NYCHRL and the New York State Human Rights Law. Defendant assessed points and threatened discipline because she used that leave.

196. Defendant assessed attendance points against Plaintiff and the NYLL § 215 Class because they used protected absences and threatened escalating discipline, including termination, based upon those points.

197. Defendant further terminated Plaintiff shortly after her protected absences and the attendance warning. Plaintiff's use of protected absences was a motivating reason for that termination.

198. The assessment of points and threat of discipline themselves violated NYLL § 215. Defendant further carried out the threatened harm when it terminated Wisdom shortly after penalizing her for the injury-related absences.

199. Due to Defendant's violations, Plaintiff and the NYLL § 215 Class are entitled to recover lost compensation and other damages caused by Defendant's retaliation, front pay in lieu of reinstatement, liquidated damages up to $20,000 each, and reasonable attorneys' fees and costs pursuant to NYLL § 215(2).

**SIXTH CAUSE OF ACTION**
**New York City Human Rights Law – Disability Discrimination**
**(Brought on behalf of Plaintiff Individually)**

200. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

201. The provisions of N.Y.C. Administrative Code § 8-107(1)(a) apply to Defendant and protect Plaintiff against discrimination because of an actual or perceived disability.

202. Wisdom's physical injuries and resulting limitations constituted a disability within

the meaning of N.Y.C. Administrative Code § 8-102. Defendant knew of those injuries and, alternatively, perceived Wisdom as having a disability.

203. Wisdom could perform the essential requisites of her position with the reasonable accommodation described above.

204. Defendant treated Wisdom less well because of her actual or perceived disability by assessing attendance points for injury-related absences and terminating her employment. Her actual or perceived disability was at least one motivating factor in Defendant's actions.

205. The close sequence of Wisdom's injury, notice to Defendant, injury-related absences, attendance warning, and termination, together with Defendant's reliance on criminal history obtained in connection with hiring, supports an inference of discrimination.

206. The actions alleged were taken pursuant to Defendant's policies and by employees or agents with managerial or supervisory responsibility. Defendant is liable pursuant to N.Y.C. Administrative Code § 8-107(13).

207. Defendant's conduct reflected a willful and wanton disregard of Wisdom's protected rights. As a result, Wisdom suffered lost compensation and other compensatory damages in amounts to be determined at trial and is entitled to compensatory damages, punitive damages, and reasonable attorneys' fees and costs pursuant to N.Y.C. Administrative Code § 8-502.

**SEVENTH CAUSE OF ACTION**
**New York City Human Rights Law – Failure to Accommodate**
**(Brought on behalf of Plaintiff Individually)**

208. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

209. The provisions of N.Y.C. Administrative Code § 8-107(15) apply to Defendant and protect Plaintiff.

210. Defendant knew or should have known that Wisdom's injuries required a reasonable accommodation in the form of the recovery leave or other accommodation described above.

211. Wisdom requested that accommodation and could satisfy the essential requisites of her position with the accommodation. The accommodation would not have imposed an undue hardship on Defendant.

212. Defendant failed to provide the reasonable accommodation and instead assessed attendance points and terminated Wisdom's employment.

213. Due to Defendant's violations, Wisdom is entitled to compensatory damages, punitive damages, and reasonable attorneys' fees and costs pursuant to N.Y.C. Administrative Code § 8-502.

## EIGHTH CAUSE OF ACTION
**New York City Human Rights Law – Failure to Engage in Cooperative Dialogue**
**(Brought on behalf of Plaintiff Individually)**

214. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

215. The provisions of N.Y.C. Administrative Code § 8-107(28) apply to Defendant and protect Plaintiff.

216. Wisdom requested an accommodation for her disability and, in any event, Defendant had notice that she might require an accommodation because of her reported injuries and need for recovery leave.

217. Defendant failed to engage in a cooperative dialogue within a reasonable time concerning Wisdom's accommodation needs, potential accommodations or alternatives, and any difficulties those accommodations might pose.

218. Defendant also failed to provide a written final determination identifying any

accommodation granted or denied before terminating Wisdom's employment.

219. Defendant's failure deprived Wisdom of the opportunity to identify an accommodation through the required dialogue and contributed to the loss of her employment and compensation.

220. Due to Defendant's violations, Wisdom is entitled to compensatory damages, punitive damages, and reasonable attorneys' fees and costs pursuant to N.Y.C. Administrative Code § 8-502.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated persons, respectfully requests that this Court grant the following relief:

A. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, with the classes described above;

B. Designation of Plaintiff as representative of the respective classes and counsel of record as Class Counsel;

C. Actual damages or statutory damages of $100 to $1,000 for willful noncompliance with the FCRA, punitive damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n;

D. In the alternative, actual damages caused by negligent noncompliance with the FCRA and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681o;

E. Unpaid uniform maintenance compensation and an additional equal amount as liquidated damages pursuant to the NYLL;

F. Statutory damages of two hundred fifty dollars for each workday that Defendant's wage statement violations occurred or continued, up to five thousand dollars per person, pursuant

to NYLL §§ 195(3) and 198(1-d);

G. Lost compensation, front pay in lieu of reinstatement, other damages, and liquidated damages up to $20,000 per aggrieved employee pursuant to NYLL § 215;

H. Compensatory damages, including back pay, front pay, and damages for emotional distress, together with punitive damages pursuant to the NYCHRL;

I. Pre-judgment and post-judgment interest as permitted by law;

J. Reasonable attorneys' fees and costs of the action; and

K. Such other and further relief as this Court deems just and proper.

Dated: New York, New York
November 5, 2026

Respectfully submitted,

Brian S. Schaffer

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Hunter G Benharris
14 Penn Plaza, 22nd Floor
New York, New York 10122
Telephone: (212) 300-0375

*Attorneys for Plaintiff and the Putative Classes*